Hillsborough, ⎰ No. 3131.
Jan. 2, 1940. ⎱

DENNIS R. DONOVAN *v.* ABBOTT WORSTED MILLS, INC.

*Richard F. Upton* and *Robert W. Upton* (*Mr. Richard F. Upton* orally), for the plaintiff.

*Alvin A. Lucier* (by brief and orally), for the defendant.

ALLEN, C. J. By the trial court's findings, the plaintiff was an overseer in the defendant's mill at Wilton. It was a part of his work "to order and have on hand when needed supplies and parts required to keep the looms in good workable condition and repair or supervise repairs to the looms when necessary." He was hurt while driving his son's automobile from Wilton to Manchester where he was going to buy some material needed to correct a defective process in the manufacture of cloth at the mill.

The defendant's exception rests on two grounds, one, that the plaintiff was not acting within the scope of his employment when he was hurt, and two, that his injuries did not arise out of the course of his employment even if they were incurred in the course of it.

In respect to the first ground, the court found that the plaintiff "had the duty and authority" to obtain the material "in a reasonable manner," that he adopted a reasonable manner and "acted within his scope of employment." Treating the defendant's exception as the plaintiff has done, with effect to raise the issue of the sufficiency of the evidence to warrant the finding, it may not be said that the finding was erroneous as matter of law.

It is conceded that a part of the plaintiff's work as overseer was his charge of materials, supplies and parts kept on hand for use as needed in repairing machinery and facilitating its operation and that he was to keep track of the supply so that its adequacy would be maintained. His authority to make purchases for this purpose was properly found from his testimony in cross-examination as follows: "Q. You were the sole boss in your department? A. Yes. Q. Now if you wanted a part for a machine . . . or any thing else, how did you get it? A. I got it through the office. Q. You mean you would . . . make a request at the office? A. Make an order. Q. You didn't then go and take your car or somebody else's car and go off and get that, did you? A. When I didn't have it on hand, I would have to. I didn't have to do it when I had it on hand; I would order it before. Q. That is, it was part of your job to keep the necessary equipment and materials and things on hand? A. Yes."

The material which the plaintiff planned to obtain in Manchester was out of stock at the mill, the supply having been exhausted, as he testified, by the loom fixers without his knowledge until the special need of it on the day of the accident developed. There was therefore special occasion for going to Manchester, as the court found. If the occasion was an unusual one, it was yet one within his authority to meet. This might be found from the following testimony elicited

from him: "Q. There was nothing extraordinary about the fact that you were going to get some new sandpaper and replace that old sandpaper with new; that is something you had to do with routine? A. That is my work to do it, as a buyer. Q. That is, that was your work? A. Yes." The situation was one "that might be expected to arise" (*New Hampshire &c. Co.* v. *Paine*, 80 N. H. 540), and authority to act therefore existed, although occasion thus to act might be infrequent. His conduct was findably within the reasonable implications of the terms of his employment. It was not an improper or unauthorized method to take the trip as was done, by the use of a third person's automobile.

The inquiry whether the accident arose out of the plaintiff's employment depends for its answer upon his relationship with the defendant while driving the automobile. In one sense he was not in the defendant's service. The management and operation of the automobile was not subject to the defendant's direction and control. But in another sense he was rendering an act of service in driving. In his journey from Wilton to Manchester he was an employe in the performance of an errand for his employer, whatever his means of locomotion, by car, train, bicycle or on foot. The dual situations, of independent control of the automobile and of service for the employer while in the exercise of such control, are not inconsistent, although they may overlap. If the plaintiff, instead of driving his son's automobile, had engaged the son to drive, any accident sustained would have been one arising out of the course of employment, and the accident incurred likewise thus arose. Or if he had walked to the village store in Wilton to buy some article for the mill and had been injured while on the way, the right to compensation would follow.

The accident occurred not only during the trip to Manchester, but because of it. The issue of negligence is not presented as a test of the right of compensation, and whatever the immediate cause of the accident, the accident was a proximate result and outcome of the trip. The plaintiff was hurt because of happenings incident to the trip, and forming a part of the trip. The requirement of causal connection declared in *Guay* v. *Company*, 83 N. H. 392, 396, is thus met. Independent control of the automobile did not exclude the service as a causative factor of the accident.

In *Manock* v. *Company*, 86 N. H. 104, the accident occurred while the decedent was engaged in service for the owner of trucks hired with their drivers by the defendant. When hurt the decedent was not in the defendant's service, but in that of the owner of the trucks,

and the defendant, not being his employer, was not under obligation to pay compensation. But "as to what was done by the truck in its movement from place to place the decedent might be deemed to have been the defendant's servant, because in those matters the defendant had the right of control." *Ib.*, 106. So here the defendant had the right to direct the trip, though not how the automobile should be operated. It was an act of employment for the plaintiff to take the trip, and he was hurt in consequence of the act. Whether the consequence took form in his fault, the fault of another, or accident, it remained a consequence.

*Decree affirmed.*

All concurred.