NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2167
_____

GLENN, ROBERT E., as Trustee of Carter,
T.A., Jr. & Carter, Jeanette, et al. ;
REVOCABLE TRUST,
Appellant

v.

OSWAINIO DUNLOP
_____

Appeal from the District Court
for the Virgin Islands
(D.C. Civil No. 3-05-cv-00145)
District Judge: Honorable Curtis V. Gomez
_____

Submitted Under Third Circuit LAR 34.1(a)
April 15, 2011

Before:  SCIRICA, RENDELL and AMBRO, Circuit Judges

(Opinion Filed: April 18, 2010)
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

This appeal arises out of a dispute over the ownership of a parcel of approximately

3.6 acres of land on St. John in the U.S. Virgin Islands (the "Property").

Plaintiff/appellant Robert E. Glenn is the trustee of the T.A. Carter, Jr. and Jeannette W.

Carter Joint Revocable Trust, which acquired the Property in the late 1990s. Defendant/appellee Oswainio Dunlop, a descendant of the Property's former owner, asserts that the conveyance of the Property to the Trust was invalid and has recorded a number of documents against the Property with the St. John Office of the Recorder of Deeds, effectively blocking any further sale.

In September 2005, Glenn filed this suit on behalf of the Trust against Dunlop, asserting claims for slander of title, defamation, civil extortion, abuse of process, intentional harm to property interest, declaratory judgment, and an injunction, all arising out of Dunlop's actions with respect to the Property. In a written memorandum opinion following a bench trial, the District Court denied the Trust relief on all of its tort claims. At the same time, it held that the Trust owns the Property in fee simple absolute and that Dunlop has no ownership interest in the Property, that the Trust was entitled to a declaratory judgment to that effect, and that the Trust was entitled to an injunction compelling Dunlop to remove the documents he has recorded against the Property and prohibiting Dunlop from recording additional documents against the Property. The District Court's judgment enjoined Dunlop from prospectively recording additional documents, but it did not order him to remove the previously recorded documents.

Glenn subsequently moved the District Court to alter or amend the judgment to reflect the portion of its opinion related to the removal of the recorded documents and for attorneys' fees and costs. The District Court denied both motions.

On appeal, Glenn (1) argues that the District Court erred by omitting from the judgment an order requiring Dunlop to remove documents recorded against the Property

2

and in denying Glenn's request to alter or amend the judgment; (2) challenges the District Court's substantive conclusions with respect to the slander-of-title, defamation, and intentional-harm-to-property-interest claims; and (3) contends that the District Court abused its discretion in denying his motion for attorneys' fees and costs. Dunlop has not filed a brief responding to Glenn's arguments.[1] We will vacate the judgment in part and remand for the District Court to (1) revise the judgment to reflect its conclusion regarding the scope of injunctive relief; (2) reconsider its analyses of Glenn's slander-of-title and intentional-harm-to-property-interest claims; and (3) revisit Glenn's motion for attorneys' fees and costs. We will affirm the District Court's judgment with respect to the defamation claim.[2]

## I.

John J. Henry acquired the Property in 1907. Henry died intestate and his interest in the Property was never probated; as a result, the Property passed to his children and grandchildren by intestate succession. During the 1990s, Guy Henry Benjamin, a descendant of Henry's, arranged to sell the Property to the Trust through a series of transactions. Benjamin collected powers of attorney from several Henry family members, including Dunlop's mother, and conveyed their combined interests to the

---

[1] Dunlop also separately appealed the District Court's judgment. We dismissed that appeal after Dunlop failed timely to file a brief.

[2] The District Court exercised diversity jurisdiction under 28 U.S.C. § 1332. We have jurisdiction to review the Court's original judgment and its subsequent order denying Glenn's motions to amend or alter the judgment, and for attorneys' fees, under 28 U.S.C. § 1291. *See* Fed. R. App. P. 4(a)(4)(A)(iv); *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 194 (3d Cir. 2000).

Trustees of Roanoke College by deed of gift. The remaining Henry family members conveyed their interests to the College by quitclaim deed. After the College obtained a judgment quieting title to the Property from the former Virgin Islands Territorial Court (now known as the Superior Court) in 2002, the Trust purchased the Property from the College.

The Trust subsequently contracted to sell all of its holdings on St. John, including the Property, for $10.6 million. After Dunlop learned of the sale contract, he contacted the Trust and its representatives, alleging that Benjamin had procured consents to sell the Property from Dunlop's mother and another Henry family member by fraud. In August 2005, Dunlop recorded affidavits related to the alleged fraud and other documents against the Property. In September 2005, Glenn responded by filing this case. Dunlop subsequently recorded additional documents, including a notice of *lis pendens* related to this case, against the Property. The District Court found that the documents Dunlop recorded prevented the Trust from closing the sale of its St. John holdings by clouding the Trust's title to the Property.

In January 2006, Dunlop petitioned the Virgin Islands Superior Court for control over Henry's estate as a means of reasserting the Henry family's interest in the Property. After Roanoke College filed a motion informing the Superior Court that it had quieted title to the Property, the Superior Court revoked Dunlop's status as special administrator of the estate. It ordered that the matter would remain open for thirty days to allow any of Henry's heirs to establish an interest in the Property, after which Dunlop's petition would

4

be dismissed.  The record does not reflect any further attempt by any Henry family member other than Dunlop to assert an interest in the Property.

II.

### A.    The Scope of Injunctive Relief

Glenn first argues that the District Court erred in issuing a judgment that was inconsistent with its written memorandum opinion and in subsequently denying Glenn's motion to alter or amend the judgment to reflect the District Court's opinion.[3]  We agree.

The District Court's memorandum opinion recognized that Glenn sought a two-part injunction "to compel Dunlop to discharge and remove the documents Dunlop has recorded against the Property *and* to prohibit Dunlop from recording documents against the Property in the future," *Glenn v. Dunlop*, No. 2005-145, 2009 WL 482481, at *8 (D.V.I. Feb. 23, 2009) (emphasis added).  It held that Glenn had satisfied each of the required elements for such an injunction, *id.* at *8-9, and its reasoning, which turned on the actual harm the Trust has sustained as a result of the previously recorded documents and on the public's interest in "discouraging individuals from recording baseless documents against property," *id.* at *9, applies equally to existing and future recorded documents.  After conducting a thorough analysis, the District Court concluded that it would both "issue an injunction to prohibit Dunlop from recording documents against the

---

[3]  Glenn filed a Motion to Modify Injunction and for Expedited Determination in this Court, seeking substantially the same relief as his merits arguments on this issue. Because we grant this relief as part of our disposition on the merits above, we will deny Glenn's motion as moot.

Property," *id.* at \*9, and "issue an injunction to compel Dunlop to remove any and all documents he has recorded against the Property," *id.* at \*10.

Despite the clarity of the District Court's *opinion* regarding the scope of the injunction, its *judgment* enjoined Dunlop only "from recording any documents against the Property with the Recorder of Deeds," *id.* at \*10; it did not mention that the documents Dunlop recorded in 2005, which remain in the Property's chain of title, have already prevented the Trust from completing one sale of its St. John holdings and have frustrated the Trust's attempts to find other buyers, *see id.* at \*9. Glenn brought this issue to the District Court's attention in a motion to alter or amend the judgment, which the District Court summarily denied "without prejudice." App. 3039-40.

The inconsistency between the District Court's memorandum opinion and its original judgment makes no sense, and it did not provide any explanation for its refusal to alter or amend the judgment. We will reverse the Court's denial of Glenn's motion to alter or amend, and will remand for it to revise the judgment to conform to its opinion by ordering Dunlop to remove any and all documents he has recorded against the Property.[4]

### B. Slander of Title

The Restatement (Second) of Torts provides that, to prevail on a slander-of-title claim, a plaintiff must show: "'a) falsity of the statement; b) injury to pecuniary interests, such as property, products, or business; c) publication to a third person; d) special harm

---

[4] Glenn also asks us to order the District Court to enter an injunction compelling the St. John Recorder of Deeds to remove the recorded documents. Such an order would be inappropriate here, as the Recorder of Deeds is not a party to this case.

in the form of actual pecuniary loss; and e) intent, malice, or fault to cause harm.'"[5]

*Glenn*, 2009 WL 482481, at *3 (citations omitted). The District Court concluded that

Glenn failed to prove the "falsity of the statement" and "actual pecuniary loss" prongs of

his claim. *Id.* at *3-4. We agree with Glenn that the District Court's analysis both

reflects an unnecessarily cramped view of the law and failed to consider all of the

relevant evidence.

The District Court concluded that Glenn failed to establish the first, "falsity of the

statement" prong, after finding that (1) Glenn "failed to present any evidence

demonstrating that Dunlop entertained doubts about the truth of the documents he filed

against the Property"; (2) "Dunlop had a good faith belief that he was protecting what he

thought was his family's interest in the Property"; and (3) "given Glenn's election not to

call Dunlop as a witness, there is absolutely no evidence of Dunlop's state of mind." *Id.*

at *3.

Each of these three findings is flawed. First, to establish his slander-of-title claim,

Glenn does not need to establish that Dunlop actually "'entertained serious doubts as to

the truth of his publication,'" *id.* at *3 (quoting *Grove v. Dun & Bradstreet, Inc.*, 438

F.2d 433, 435 (3d Cir. 1971) (emphasis omitted)); that heightened standard applies to

claims involving libel against public figures, *i.e.*, "those who thrust themselves, either

through political action or other activity which invokes public interest or concern, into the

public limelight," *Grove*, 438 F.2d at 435. In a straightforward slander-of-title claim, like

---

[5] Under Virgin Islands law, restatements of the law provide "the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." V.I. Code Ann. tit. 1, § 4.

7

this one, the Restatement provides that a defendant's "reckless disregard" for a statement's truth or falsity provides a sufficient basis for liability. Restatement (Second) of Torts § 623A cmt. d. Thus, the District Court erred in concluding that a failure to establish that Dunlop entertained actual doubts about the truth of the documents he filed disposed of Glenn's claim.

Second, the District Court's reliance on Dunlop's subjective, "good faith belief" as evidence that Glenn failed to establish liability is misplaced. As Glenn points out, the Restatement employs an *objective* reasonableness standard, so that the publisher of a false statement may be found liable if he "know[s] enough of the circumstances so that he should as a reasonable man recognize the likelihood that some third person will act in reliance upon his statement, or that it will otherwise cause harm to the pecuniary interests of the other because of the reliance." *Id.* § 623A cmt. b; *see also id.* § 624 (indicating that liability for slander of title arises from "publication of a false statement disparaging another's property rights in land . . . that the publisher *should recognize* as likely to result in pecuniary harm to the other" (emphasis added)). In other words, the question is not whether Dunlop was motivated in part by a sense that he was protecting his family's interests in the Property, but whether he *should have realized* that, by recording documents against the Property, he likely would harm the Trust.

Moreover, and equally importantly, the District Court's conclusion that Dunlop was motivated by a "good faith belief" to protect his family's interest conflicts with the testimony of several witnesses, including Sandra Ferris, who assists the Trust with real estate matters, and Brion Morrisette, one of the Trust's lawyers, that Dunlop demanded

8

millions of dollars from the Trust in exchange for a promise not to record documents against the Property. But the District Court's opinion does not even mention that testimony. On remand, it should explain how this evidence concerning Dunlop's attempts to extract payments from the Trust in exchange for foregoing his claims to the Property factors into its analysis.

Third, the District Court's assertion that the record contained "no evidence of Dunlop's state of mind" as a result of "Glenn's election not to call Dunlop as a witness" fails to note the important fact that, after seeking and obtaining the District Court's permission, Glenn designated portions of Dunlop's deposition testimony as part of his case-in-chief under Federal Rule of Civil Procedure 32(a)(3). Portions of the designated testimony suggest that Dunlop specifically intended to thwart the Trust's planned sale of its St. John holdings. This evidence bears both on Dunlop's "state of mind" and on the questions of whether he acted with reckless disregard for the truth or falsity of his statements and whether he recognized or should have recognized that his actions were likely to cause the Trust pecuniary harm. Therefore, like the testimony of the other witnesses discussed above, it must be considered as part of the overall analysis of Glenn's slander-of-title claim.

With regard to the "actual pecuniary loss" prong of Glenn's slander-of-title claim, the District Court concluded that Glenn's "evidence showing that Dunlop's recorded documents clouded the Property's title," and "evidence of future pecuniary harm," were insufficient to establish the degree of pecuniary harm required to prove his claim. *Glenn*, 2009 WL 482481, at *4. This conclusion is at odds with the Restatement, which

9

specifically cites "impairment of vendibility or value caused by disparagement" as a type of pecuniary loss that satisfies this element of a slander-of-title claim and explains that "[t]he most usual manner in which a third person's reliance upon disparaging matter causes pecuniary loss is by preventing a sale to a particular purchaser." Restatement (Second) of Torts § 633(1)(a) & cmt. c.

Applying that standard, it would seem that Glenn actually *has* proved this element of his claim: according to the District Court, "Glenn has adduced evidence that Dunlop's recorded documents have impeded the Trust from selling the Property," including "evidence . . . that the Trust's contract for the sale of the Property to a third party[] was terminated because of Dunlop's recorded documents" and "evidence . . . that the Trust has since been unable to find another buyer for the Property because of those documents," 2009 WL 482481, at *9. But because the Court is in the best position to apply the correct standard to the totality of the evidence presented in the case, we will vacate the judgment on the slander-of-title claim and remand so that it may consider the lost sale, and reconsider its overall analysis, in light of this opinion.

### C. Defamation

The District Court held that Glenn failed to establish his defamation claim because he did not establish that "Dunlop made a false or defamatory statement about the Trust or himself." *Id.* at *4. On appeal, Glenn argues that a notice of *lis pendens* pertaining to this case that Dunlop filed against the Property constitutes a form of defamation. His theory is that the notice impugns Glenn's and the Trust's reputations by suggesting that they are attempting to sell land they do not own. We disagree. The *lis pendens* notice

10

does not imply anything sinister or untrue about Glenn or the Trust; it simply provides notice of a legal disagreement regarding title to the Property. Accordingly, we will affirm the District Court's judgment with respect to Glenn's defamation claim.

### D.     Intentional Harm to Property Interest

The District Court held that Glenn failed to establish his claim for intentional harm to property interest (also known as a "*prima facie* tort" claim) because it found that the evidence at trial "did not establish that Dunlop's sole purpose in recording documents against the Property was to injure Glenn or the Trust"; instead, "all signs indicate that Dunlop's motivation in investigating his family's purported interest in the Property was to safeguard that interest." 2009 WL 482481, at *7.

Leaving aside the question of whether the record supports those findings (discussed in connection with the slander-of-title claim above), the District Court applied an improperly burdensome legal standard to Glenn's claim. The Restatement provides that the "intent" element of the offense is satisfied where the defendant (1) desires to bring about harm as a consequence of his act, or (2) knows or believes that harm is certain, or substantially certain, to result from his actions, Restatement (Second) of Torts § 870 cmt. b; it does not require a plaintiff to prove that the defendant acted *solely* out of an intent to harm.[6]

---

[6] The District Court cited another case from the District of the Virgin Islands in which the court quoted and applied the "sole motivation" requirement to a *prima facie* tort claim. *See* 2009 WL 482481, at *6 (quoting *Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 955 F. Supp. 441, 463 (D.V.I. 1997)). That case does not control our analysis, however, because it relied in part on New York law, which has adopted

11

At the same time, however, we note that *prima facie* tort claims typically provide relief only where the defendant's conduct "does not come within the requirements of one of the well established and named intentional torts." Restatement (Second) of Torts § 870 cmt. a. In keeping with this principle, courts in the Virgin Islands have dismissed *prima facie* tort claims that they deem insufficiently "distinct" from plaintiffs' other, more established tort claims. *See, e.g.*, *Moore v. A.H. Riise Gift Shops*, 659 F. Supp. 1417, 1426 (D.V.I. 1987); *Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 955 F. Supp. 441, 463 (D.V.I. 1997) ("[N]o claim for prima facie tort lies if the action complained of fits within another category of tort." (citation omitted)). In this case, there appears to be significant potential for overlap between the slander-of-title and *prima facie* tort claims. Thus, we will vacate the District Court's judgment on the intentional-harm-to-property-interest claim and remand for the District Court to determine whether it duplicates the slander-of-title claim. In other words, to the extent that the District Court determines that Glenn is entitled to relief on the slander-of-title claim, it should deny relief on the intentional-harm-to-property-interest claim if it concludes the claims are one and the same.[7]

more stringent standards for liability on *prima facie* tort claims than the Restatement requires. *See* Restatement (Second) of Torts § 870 cmt. a.

[7] If the District Court determines that Glenn is not entitled to relief on the slander-of-title claim, then it should consider whether he has established his intentional-harm-to-property-interest claim.

**E.     Attorneys' Fees**

The District Court denied Glenn's motion for attorneys' fees and costs in a summary ruling "without prejudice." App. 3039-40. We conclude that this was an abuse of discretion.

At the outset, we note (but do not decide) that it seems likely that Glenn was entitled to recover at least some of his fees: Virgin Islands law specifically provides that a "prevailing party" is entitled to attorneys' fees, *see* V.I. Code Ann. tit. 5 § 541(b), and cases interpreting that provision have allowed plaintiffs to recover fees even if they did not obtain all of the relief they sought, *see, e.g.*, *Ingvoldstat v. Kings Wharf Island Enters.*, No. 1983/86, 1983 U.S. Dist. LEXIS 13112, at *4 (D.V.I. Oct. 4, 1983) ("[I]t is settled law that as long as a plaintiff achieves some of the benefits sought in maintaining a lawsuit, even though that plaintiff does not ultimately succeed in securing the judgment sought, the plaintiff can be considered the prevailing party for purposes of a fee award." (citation omitted)).

At a minimum, "it is incumbent upon a district court to make its reasoning and application of the fee-awards jurisprudence clear, so that we, as a reviewing court, have a sufficient basis to review for abuse of discretion." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 196 (3d Cir. 2000). The District Court did not do so here: its order does not apply the law or provide any explanation for its decision to deny the motion for attorneys' fees. Therefore, we will vacate the Court's order denying Glenn's motion for attorneys' fees and remand so that it may reconsider the motion.

13

**III.**

For the foregoing reasons, we will reverse the District Court's judgment on the injunction claim and its order denying Glenn's motion to alter or amend the judgment, and will remand for the Court to revise the scope of the injunction to conform to its opinion. We will vacate the Court's judgment with respect to Glenn's slander-of-title and intentional-harm-to-property-interest claims, and will remand so that it may reconsider those claims in light of this opinion. We also will vacate the Court's order denying Glenn's motion for attorneys' fees and costs and remand for further proceedings on Glenn's motion consistent with this opinion. We will affirm the Court's judgment with respect to the defamation claim.